**Rafael ZAMBRANO, Plaintiff,**

v.

**John R. BLOCK, Secretary, Department of Agriculture, Defendant.**

**Civ. A. No. 82–C–2033.**

United States District Court,
D. Colorado.

May 2, 1984.

Sylvian R. Roybal, Denver, Colo., for plaintiff.

Janis E. Chapman, Asst. U.S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

This is an employment discrimination case. Plaintiff Rafael Zambrano claims that the defendant John R. Block, United States Secretary of Agriculture, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by twice denying him a promotion because of his Hispanic national origin. Jurisdiction is founded on 42 U.S.C. §§ 2000e–5(f) and 2000e–16(c). The issues were bifurcated with liability to be tried first and damages reserved for later trial if required. I have considered all the testimony and other evidence presented at the liability trial held April 11 and 12, 1984. This memorandum constitutes my findings of fact and conclusions of law regarding liability as required by Fed.R.Civ.P. 52(a).

The parties have stipulated to most of the facts. Plaintiff was first employed by the defendant late in 1972 as a Food Program Specialist at civil service grade GS–5. In 1976, the plaintiff requested and received a transfer to the defendant's Denver, Colorado office. By this time, through a series of promotions, the plaintiff had risen to civil service grade GS–11.

In August, 1980, the defendant began soliciting applications for the position of Supervisory Food Program Specialist at the Denver office. This job carried a grade of GS–12. Plaintiff applied, and, along with seven other applicants, was determined to be "best qualified" for the position and therefore eligible for selection. These eight candidates were submitted to the selecting official, John Merz, a non-Hispanic white male. On or about September 11, 1980, Merz chose for promotion a non-Hispanic white male, Edgar Knight.

On November 28, 1980, Knight officially requested demotion to GS–11 and reassignment to a position with the defendant's Family Nutrition programs. In explanation, Knight stated that he found it difficult to deal with the "unstructured" Food Distribution Program after his experience

in the Family Nutrition programs and his long career in the military.

On December 2, 1980, the defendant began a second formal solicitation for the GS–12 position Knight had vacated. This procedure was undertaken in spite of the fact that the previously used eligibility list was still valid and could have been used again.

Once again, the plaintiff applied. He and five other applicants were found to be "best qualified," and their names were submitted to Merz. This time, Merz chose Mary Nielsen, a non-Hispanic white female. Nielsen had not applied for the August, 1980 opening because at that time she did not have sufficient "time in grade" to qualify.

■ Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff establishes a prima facie case of discriminatory failure to promote in violation of Title VII by producing proof of four elements. First, the plaintiff must be a member of a class protected by Title VII. Second, the plaintiff must have applied, and have been qualified, for the promotion. Third, the plaintiff must have been denied the promotion. Finally, the person actually promoted must not be a member of the plaintiff's protected group.

■ If this prima facie case is established, the defendant may articulate a legitimate, nondiscriminatory reason for the failure to promote the plaintiff. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1129, 1135 (10th Cir.1983). If such a reason is articulated, the *McDonnell-Burdine* presumption drops from the case, and the court must decide the ultimate issue of whether the failure to promote was motivated by unlawful discrimination. *Whatley v. Skaggs Companies, Inc.*, 707 F.2d at 1135–36. In the language of the earlier cited cases, after a legitimate, nondiscriminatory reason is articulated, the plaintiff must prove that the stated reason was pretextual. Of course, the overall burden of

proof remains at all times with the plaintiff.

■ In the instant case, all four elements of the plaintiff's prima facie case are established as to both promotion openings by the parties' stipulations. Plaintiff as an Hispanic American is a member of a class protected by Title VII. Defendant admits that the plaintiff applied, and, by the defendant's own standards, was qualified for the position. It also is undisputed that the plaintiff was not selected for either promotion, and that those selected were both non-Hispanics. Thus the defendant had the burden of going forward to articulate some legitimate, nondiscriminatory reason for failing to promote the plaintiff.

As to the first promotion vacancy, the defendant presented the testimony of Merz, the selecting official. Merz testified that the plaintiff was not promoted because when Merz interviewed him for the position the plaintiff used excessive slang. This reason was also asserted in a letter Merz wrote in response to the plaintiff's inquiry about the reasons for his failure to obtain the promotion given to Knight. Merz also testified that the plaintiff had put his feet on the table during the interview, but Merz failed to mention any such incident in the letter.

■ Defendant's obligation to put forth a legitimate, nondiscriminatory reason for its actions is a light one. *See Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1135. Consequently, I find and conclude that the defendant has articulated such a reason. Plaintiff, therefore, must meet his burden of proof by establishing that the defendant's articulated explanation is merely pretextual.

■ Of course, evidence of discrimination is usually circumstantial. Turning first to Merz' stated reasons for the decision not to promote the plaintiff, I find and conclude that these reasons were pretextual. Merz' testified that the plaintiff's use of slang occurred twice during the interview. In one instance, the plaintiff alleged-

ly used the term "dude." Plaintiff denied he used that word, and I believe him.

In the other instance, the plaintiff used a vulgar, crude expression, but one frequently used. This occurred during repetitive questioning about how the plaintiff would handle a hypothetical, underproductive employee. Merz' interview technique repeated the same question over and over in the hope the applicant would ultimately come up with the precise response Merz wanted. It was in apparent frustration or exasperation at not being able to answer consistently with Merz' expectations that Zambrano used the questioned phrase, and it was in no sense directed toward Merz. Taken alone, this trivial incident could not have been significant, especially given the highly informal nature of the interview. More indicative of pretext, however, is the uncontradicted evidence that Merz himself frequently cursed or used profanity in public areas of the office when dealing with staff members, representatives of other government agencies, and the public. Merz admitted that he was not offended or shocked by the plaintiff's language, but merely considered it inappropriate under the circumstances. Isolated uses of such language in a private, informal interview setting with a fellow employee known to use similar language in public on frequent occasions can hardly qualify as a rational justification for denying a promotion to an otherwise deserving candidate.

Although I would be satisfied that Merz' own frequent use of slang demonstrates pretext, other evidence should be noted. Only Merz and the plaintiff could have had personal knowledge of the alleged "feet on the table" incident. Merz testified that the incident had occurred; the plaintiff denied it. I find and conclude that the plaintiff's testimony on this matter is more credible. If the incident occurred as Merz claims, and it had entered into his evaluation of the plaintiff for the promotion, he probably would have mentioned it in his letter explaining why he passed over the plaintiff. He did not.

█ Other factors also tend to show that the plaintiff suffered from discrimination.

Exhibit 17, a simple statistical compilation, demonstrates that until the plaintiff filed his administrative complaint in this dispute, Hispanics in the Mountain Plains Region of the defendant's agency were grossly underrepresented in the higher salary grades of GS–11 and GS–12 in comparison to their numbers in lower grades. The most reasonable inference from Exhibit 17 is that some sort of barrier to Hispanic advancement had been erected at the GS–12 level in this government agency. It is the function of Title VII to help boost minority candidates over such discriminatory barriers.

Further, the plaintiff appears to have been more qualified than Knight under the job standards outlined by Merz. He stated that the position of Supervisory Food Program Specialist required the ability to meet and work with state personnel, and with representatives of Indian tribes participating in the program. The supervisor also had to be a good writer and editor, and have experience with federal regulations and instructions. With the possible exception of the last mentioned qualification, the plaintiff probably was better qualified than Knight. Plaintiff had worked in this program for many years, and had significant, frequent contacts with state and Indian reservation representatives. Knight's state agency experience was much more limited, and he had no meaningful experience with Indian matters. In fact, the evidence showed that Knight's resignation was motivated in large part by his shock at the poverty and organizational disarray he found on the Indian reservations when he undertook his duties with respect to Indians.

No writing samples were requested by Merz, despite the stated importance of writing ability. Finally, although Knight's military experience and prior agency work no doubt involved experience with federal regulations, the plaintiff's experience with the defendant's own regulations was substantial. In fact the plaintiff had been a member of an agency-wide drafting committee designed to revise and improve the defendant's regulations.

For all these reasons, I find and conclude that the plaintiff was denied the first promotion because of his national origin. If the plaintiff had been given that first promotion, it is unlikely that the second promotion opportunity would have arisen. I therefore will not discuss in detail the circumstances of Mary Nielsen's promotion. The evidence showed, however, that Nielsen's promotion was accompanied by significant departures from the usual agency promotion process. Most notable was Merz' action in bypassing Nielsen's immediate supervisor, who under normal circumstances would have rated Nielsen's job performance. Instead Merz rated Nielsen himself. This, coupled with an earlier employment acquaintanceship between Merz and Nielsen in the defendant's Chicago office, tends to show that Merz' explanations for selecting Nielsen over the plaintiff probably were pretextual as well.

In finding and concluding as I have, I have relied not only on the plaintiff's testimony, but on that of Ray G. Vigil, who was a very credible and persuasive witness.

Plaintiff has not sought an order requiring his promotion because he was promoted to a GS–12 position sometime after filing his administrative complaint. He does seek back pay to compensate him for wages lost before he was promoted, as well as costs and attorneys' fees. He is entitled to backpay, costs and attorneys' fees.

Counsel for both parties shall confer within ten days from the date of this order in an attempt to agree on the amount of reasonable attorneys' fees. If no such agreement can be reached, the plaintiff may file an appropriate motion, to ask for a trial on the damages issue. That matter will be heard on an expedited basis.